UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA YVETTE SIMON,

    Plaintiff,

v.                                             Case No. 8:20-cv-1650-SPF

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.    Procedural Background**

Plaintiff applied for DIB on July 17, 2017 (Tr. 211-13). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 96-98, 101-06). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-53). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 18-26).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021 and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-9). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff was born in 1962 and claimed disability beginning March 10, 2016 (Tr. 211). Plaintiff graduated from college with a degree in sociology (Tr. 36). Her past relevant work experience was as a production specialist for Standard and Poor's, a job she held for 21 years (Tr. 36). She described her duties as "maintaining the ratings, making sure that all the ratings were accurate and that the ratings went out at a specific – that they were correct and they went out at a specific time." (Tr. 37) Plaintiff alleged disability due to three bulging discs in her neck, sacroiliac joint dysfunction, lower back nerve pain, high blood pressure, and arthritis in both knees (Tr. 233).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since March 10, 2016, the alleged onset date (Tr. 20). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the knees, chronic obstructive pulmonary disease, fibromyalgia, and obesity (Tr. 21). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id*). The ALJ then

concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with limitations. Specifically,

> Function by function, the claimant remains able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or [sic] up to 2 hours in a workday, and sit 6 hours in a workday. She can occasionally climb ladders, ropes, scaffolds, ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, hazards, and irritants such as fumes, odors, dust, and gases.

(R. 21).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 26). Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work (*Id.*). The ALJ then found Plaintiff not disabled based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE (*Id.*).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an

impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration ("SSA"), to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits her ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform her past relevant work.  If the claimant cannot perform the tasks required of her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of her age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV. Analysis

Plaintiff raises one issue on appeal – whether the ALJ properly evaluated the opinions of Sunil Panchal, M.D., Plaintiff's treating pain management doctor. After a thorough review of the record, the parties' submissions, and the applicable regulations, the Court concludes that Plaintiff presents no basis for reversal or remand.

Prior to March 27, 2017, SSA regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it

was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Good cause existed "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on July 17, 2017 (*see* R. 211-13). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are

the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards an ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v.*

*Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  And while the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[2]  20 C.F.R. § 404.1520c(b)(2).

Under the new regulations, the ALJ does not need to "give good reasons" for the weight he or she assigns to treating source opinions.  *Compare* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").  But whether these new regulations eliminate the judicially-created treating physician rule – a longstanding requirement in this Circuit, *see Winschel*, 631 F.3d at 1179 – is an open question.  *See Beasley v. Comm'r of Soc. Sec.*, No. 2:20-cv-445-JLB-MRM, 2021 WL 4059895, at * 3-4 (M.D. Fla. Sept. 7, 2021).  The Eleventh Circuit has not spoken on the issue.  *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1104, n.4 (11th Cir. Aug. 12, 2021) ("[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise.").  And district courts have diverged in their approaches.  *See Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH,

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.  *See* 20 C.F.R. § 404.1520c(b)(3).

8

2021 WL 3418815, at *5 (M.D. Fla. Aug. 5, 2021) (collecting cases and applying good cause standard "in the absence of binding or persuasive authority to the contrary" but noting it was non-issue -- under both standards, ALJ's opinion was substantially supported)[3]; *Miller v. Kijakazi*, No. 4:20-cv-656-GMB, 2021 WL 4190632 (N.D. Ala. Sept. 14, 2021) (citing *Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*, 467 U.S. 837, 845 (1984), and finding treating physician rule inapplicable; plaintiff did not cite Eleventh Circuit case stating the Act mandates it and did not argue the new regulations are arbitrary, capricious, or otherwise invalid); *Wiginton v. Comm'r of Soc. Sec.*, 3:20-cv-5387-LC/MJF, 2021 WL 3684264 (N.D. Fla. Aug. 3, 2021) (applying new regulations without discussing whether Eleventh Circuit precedent regarding the treating physician rule applies); *Devra B.B. v. Comm'r of Soc. Sec.*, 6:20-cv-643(BKS), 2021 WL 4168529 (N.D.N.Y. Sept. 14, 2021) (rejecting Plaintiff's argument that the new regulations conflict with the treating physician rule and are therefore invalid); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-cv-217-EPG, 2021 WL 1721692 (E.D. Cal. Apr. 30, 2021) (finding new regulations entitled

---

[3] In finding the treating physician rule still applies, the *Bevis* court cited *Simon v. Comm'r of Soc. Sec.*, 1 F.4th 908, 912 n.4 (11th Cir. 2021) ("*Simon I*"), a July 9, 2021 decision the Eleventh Circuit withdrew on rehearing on August 12, 2021, and substituted with *Simon*, 7 F.4th 1094 ("*Simon II*"), seven days after *Bevis* was decided. In a *Simon I* footnote, the Eleventh Circuit stated that the length of a claimant's treating relationship with her doctor was still an important factor to consider under the new regulations. 1 F.4th at 914 n. 4; *see also Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562(M.D. Fla. July 12, 2021) (citing *Simon I* and emphasizing that under new regulations, length of treating relationship must still be considered). That statement was *dicta*, however, as *Simon I* and *II* were decided under the old regulations. Interestingly, *Simon II* omits the *Simon I* footnote regarding assigning weight to a treating physician's opinion under the new regulations, in favor of this language: "[W]e need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." 7 F.4th at 1104 n.4.

to *Chevron* deference; treating physician rule yields to new regulations because it conflicts with them). Here, the Commissioner argues the new regulations do away with the treating physician rule; Plaintiff does not address the issue but acknowledges that the new regulations apply. Because Plaintiff's argument fails under either standard, the Court does not reach this question. *See Beasley*, 2021 WL 4059895, at *4 (citing *Simon II* and noting that while Eleventh Circuit has not resolved potential conflict, the court "need not read the tea leaves today" because ALJ's was decision substantially supported under either standard); *Grant v. Comm'r of Soc. Sec.*, No. 4:20-cv-802-ACA, 2021 WL 3089224 (N.D. Ala. July 22, 2021) (leaving unanswered question of whether treating physician rule still applies, because under either framework, the ALJ's decision was supported by substantial evidence).

Dr. Panchal was Plaintiff's pain management doctor, treating her approximately once a month from November 2016 through June 2019 for chronic neck and lower back pain (her last appointment of record was two weeks before her administrative hearing). After treating Plaintiff for a year, in December 2017 Dr. Panchal completed a physical RFC form (Tr. 530-34). He noted Plaintiff's diagnoses of lumbar and cervical facet arthropathy, sacroiliac joint dysfunction, and nerve root compression (Tr. 530). Plaintiff's pain was "constant, and limits [her] duration of walking, standing, sitting. [Plaintiff] requires use of a cane." (*Id.*). Her pain would "frequently" interfere with her attention and concentration (Tr. 531).

Dr. Panchal checked boxes indicating Plaintiff could sit for up to 10 minutes at a time for a total of less than two hours a day, stand for up to 10 minutes at a time for a total

of less than two hours a day, and could never twist, stoop, crouch, or climb (Tr. 532-33). Plaintiff needed to walk every 10 to 15 minutes during an eight-hour workday for approximately 10 minutes at a time (*Id.*). She would need unscheduled 15-minute breaks every hour and would miss three workdays per month due to her severe pain (*Id.*). Dr. Panchal concluded that Plaintiff could frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, and never lift and carry 20 pounds (Tr. 533).

> The ALJ found Dr. Panchal's RFC assessment "less persuasive":
>
> The assessment of Dr. Panchal is so extreme as to appear implausible and the opinion starkly contrasts with the other medical opinions of record. Thus, the assessment of Dr. Panchal is rendered less persuasive. That said, the undersigned finds that the claimant's exertional limitations are likely to fall in the median of Dr. Panchal's assessment that essentially precludes all work activity and light level exertion as assessed by the medical consultants detailed below.

(Tr. 24). His consideration of Dr. Panchal's opinion continued one page later, when he determined it was unsupported by the doctor's prior treatment notes:

> Turning back to the opinion of Dr. Panchal, the undersigned also notes that his assessment is not internally consistent with his own treatment records. A review of Dr. Panchal's treatment records dated in June 2019 revealed that his physical examination findings show no objective evidence of cyanosis, clubbing, or edema at the extremities. There was no pain with passive range of motion of the knee. The claimant endorsed pain with palpation of the medial and lateral collateral ligaments. Her gait was noted to be antalgic. Flexion at the lumbar spine was good with low back pain endorsed with left lumbar facet loadings maneuvers and with palpation of the bilateral sacroiliac joints. There was neck pain endorsed with cervical facet loading. Sensation was intact in all four extremities with the caveat of hyperalgesia in the left SI distribution. Motor strength was intact at 5/5 in the bilateral upper and lower extremities. The claimant was noted to have had an excellent response to diagnostic blocks of the lumbar facet joints and SI joints.

(Tr. 25).

Regarding supportability, Dr. Panchal's exam findings were similar throughout his three-year treating relationship with Plaintiff. As the ALJ noted, Plaintiff maintained full strength in all four extremities, her spinal range of motion was good, her deep tendon reflexes were consistently normal, her straight leg raise test was normal in both legs, and she had a negative Patrick's test in both legs (*see* Tr. 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 443, 446, 449).[4] A February 2016 lumbar spine MRI revealed mild bilateral facet arthropathy at L3-4 and L4-5 but no disc herniation, spinal stenosis, or bony lesions (*see* Tr. 421). A cervical spine MRI taken a week later revealed mild to moderate right C5 root compression, a small central disc herniation and bilateral foraminal bony productive change at C5-6, mild bilateral C6 root compression, and a mild posterior bulging disc at C6-7 (*Id.*). Dr. Panchal treated Plaintiff with diagnostic nerve blocks (a localized injection that involves numbing a specific nerve or nerve group to locate which nerves are responsible for a patient's pain). In December 2016, Dr. Panchal wrote: "[Plaintiff] returns reporting 50% relief from diagnostic bilateral SI joint block and 70% relief from diagnostic bilateral lumber facet block. She had a limited response to SI joint steroids." (Tr. 425). To him, this response was "excellent." (*Id.*).

In March 2017, Plaintiff underwent radiofrequency facet denervation, a minimally invasive outpatient procedure, to treat her neck and back pain (Tr. 428). Afterwards, she reported she had residual pain in her SI joints (*Id.*). Her health insurance plan did not cover cervical facet block therapy or SI joint denervation, so as early as March 2017, Dr.

---

[4] A Patrick's test assesses a patient's flexion, abduction, and external hip rotation, and is designed to evaluate for pathology of the sacroiliac ("SI") joint. A positive Patrick's test is one that reproduces a patient's pain or limits his or her range of motion.

Panchal consistently recommended to Plaintiff that she enroll in a spinal cord stimulation trial ("SCS trial") rather than surgery (Tr. 428, 432, 434, 438, 443)  In June 2017, Plaintiff reported to Dr. Panchal that she got temporary relief from SI joint steroid injections (Tr. 435).

Dr. Panchal did not order spine imaging after July 2016 (although he ordered a left shoulder MRI in May 2019, Tr. 851) and instead prescribed Plaintiff physical therapy and gabapentin, tizanidine, and tramadol.  Many of Plaintiff's appointments were to obtain medication refills (Tr. 448, 450, 799, 802, 811, 814, 817, 820, 826, 829, 832, 841, 844, 847, 854).  In June 2019 (Plaintiff's last appointment of record with Dr. Panchal), over two years after recommending to Plaintiff that she try an SCS trial, the doctor reported:  "She wishes to pursue SCS Trial and had obtained a psych screen, but still needs to delay due to her husband's cancer treatment.  She requests refill of her opioids and denies side effects." (Tr. 854).  Overall, as the ALJ noted, Dr. Panchal treated Plaintiff's neck and back pain with trigger point and facet injections, muscle relaxants, and prescription pain medications, and he recommended physical therapy, acupuncture, and chiropractic care.  Dr. Panchal's treatment did not change much over time.  Additionally, on his RFC form, Dr. Panchal checked boxes and circles responses with very little explanation.  This has little probative value.  *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (discounting treating psychiatrists' mental health questionnaires, noting that check-off forms are "conclusory and provide little narrative or insight into the reasons behind the conclusions" and therefore are of limited probative value).  Considering this, the ALJ properly analyzed the supportability of Dr.

13

Panchal's December 2017 RFC assessment when determining its persuasiveness, as required by 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Regarding consistency – the other key factor ALJs must consider under the new regulations – the ALJ compared Dr. Panchal's RFC assessment to the opinions of other medical sources; there is substantial evidentiary support for the ALJ's statement that it "starkly contrasts" with other record evidence (Tr. 24). For example, the ALJ considered Plaintiff's September 2017 consultative physical examination with Joao Fontoura, M.D. (Tr. 516). Plaintiff had no joint swelling, erythema, or deformity (Tr. 517). She was able to lift, carry, and handle light objects and perform fine motor skills. She had 4 out of 5 hand strength and no palpable muscle spasms. She was "diffusely tender to palpation" and refused to do range of motion tests (Tr. 517-18). Plaintiff was able to squat and rise from that position and was able to rise from a sitting position without difficulty (*Id.*).[5] Dr. Fontoura observed that Plaintiff had "several trigger points positive consistent with fibromyalgia and I suspect that most of her symptoms are related to her fibromyalgia." (Tr. 518). She had significant tenderness in her SI joints, which Dr. Fontoura associated with fibromyalgia. But overall Dr. Fontoura was unable to assess whether Plaintiff "had any true joint pathology" or whether her symptoms would impact her ability to work, because her "effort associated with the exam was poor." (Tr. 518).

The ALJ also considered the physical RFC assessment completed by state agency consultative physician Richard Lewis, M.D. in January 2018. Dr. Lewis reviewed

---

[5] Dr. Fontoura stated: "[Plaintiff] did have some difficulty on occasion in standing up from her chair, although when her phone rang, the patient was able to successfully stand up by herself without her cane and pick up the phone." (Tr. 518).

Plaintiff's treatment records and opined she is capable of light exertion work with limitations, an opinion affirmed by Mary McLarnon, M.D., the state agency medical consultant tasked with reviewing Dr. Lewis's opinion (Tr. 87-88, 539).  Next, in February 2018 – as the ALJ noted – Plaintiff was treated by Richard Cain, M.D., an orthopedist at BayCare Medical Group, for bilateral knee pain.  He found Plaintiff had osteoarthritis of the right knee and IT band syndrome.  Plaintiff walked with a cane and told Dr. Cain that viscosupplementation injections in her knee had "offered her significant relief" in the past (Tr. 634).  She had full active range of motion in both knees (Tr. 635).

A left shoulder MRI in May 2019 showed only mild tendinosis (degeneration of the tendons), synovitis (swollen joints), and osteoarthritis (Tr. 852).  Plaintiff told Drs. Fontoura and Panchal that her lower back pain had started "more than 19 years ago with radiation to the hips" (Tr. 421, 517); leading the ALJ to conclude that Plaintiff, who stopped working in March 2016, "continued to work for many years with these conditions." (Tr. 25).  Considering the ALJ's comprehensive assessment and summary of the other treatment notes, the Court finds the ALJ sufficiently reviewed the evidence of record to determine the consistency of Dr. Panchal's opinion.

Finally, even assuming the treating physician rule still applies in this case, the ALJ showed good cause for discounting Dr. Panchal's opinion.  As explained above, Dr. Panchal's check-the-box RFC assessment conflicted with his treatment notes and with the other medical evidence.  *See Phillips*, 357 F.3d at 1241 (finding "good cause" when the treating physician's opinion is not bolstered by the evidence or is inconsistent with the physician's own treatment notes).

15

The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

ORDERED in Tampa, Florida, on September 17, 2021.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE